Jeffrey L. Hartman, Esq. – NSB #1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, Nevada 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Clayton P. Brust, Esq. – NSB #5234
Hannah E. Winston, Esq. – NSB #14520
**SBW LAW GROUP**
3600 Mayberry Drive
Reno, Nevada 89509
T: (775) 299-4051
cbrust@sbwlawgroup.com
hwinston@sbwlawgroup.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>META MATERIALS INC.,<br><br>       Debtor.<br><br>_____<br><br>CHRISTINA W. LOVATO,<br><br>       Plaintiff,<br><br>v.<br><br>UZI SASSON, an individual, and BDALCOM, LLC, a California limited liability company,<br><br>       Defendants. | Case No.: 24-50792-gs<br>(Chapter 7)<br><br>Adversary No.:<br><br><br>**COMPLAINT<br>(FRAUDULENT TRANSFERS)**<br>**11 U.S.C. § 548** |

Christina W. Lovato, in her capacity as the chapter 7 trustee ("***Trustee***" or "***Plaintiff***") for the bankruptcy estate of Meta Materials Inc. ("***Meta Estate***" or "***Debtor***" or "***MMAT***"), files her complaint ("***Complaint***") against Defendants Uzi Sasson individually ("***Sasson***"), and Bdalcom, LLC, ("***Bdalcom***"), and alleges as follows.

## PARTIES

1.      Plaintiff is the chapter 7 bankruptcy trustee for the Meta Estate. Plaintiff has the capacity to commence this action by way of 11 U.S.C. § 323.

2.      Plaintiff is informed and believes and thereon alleges that Defendant Sasson is a resident of the State of California.

1

3.    Plaintiff is informed and believes and thereon alleges that Defendant Bdalcom is a California limited liability company.

**JURISDICTION AND VENUE**

4.    The Bankruptcy Court has jurisdiction over this case and this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

5.    The Trustee consents to the entry of final orders and judgments by the Bankruptcy Court.

**FACTUAL ALLEGATIONS**

6.    Pre-petition, Meta Materials Inc. ("MMAT") was a publicly traded company with its shares listed on NASDAQ. As a publicly traded company, under the Securities Exchange Act ("SEC"), MMAT was required to comply with periodic filings.

7.    On or about November 4, 2023, MMAT filed a Form 8-K with the SEC ("2023 3rd quarter 8-K").  8-K forms are intended to disclose material current events including, but not limited to, acquisitions and executive changes.

8.    MMAT's 2023 3rd quarter 8-K disclosed the following key provisions:

a.    On November 4, 2023, Jim Fusaro resigned as MMAT's Chief Executive Office ("CEO");

b.    On November 5, 2023, Sasson, who had served as MMAT's Chief Financial Officer ("CFO"), and Chief Operating Officer, since April 2023, was promoted by the Board of Directors to MMAT's CEO;

c.    Base Salary: $500,000 per year (reviewed annually);

d.    Discretionary Bonus: Target of 100% of Base Salary, based on performance goals set by the Board. Prorated for 2023; paid after 10-K filing (requires continued employment through payment date);

e.    Equity Grants (recommended at first Board meeting post-Effective Date): Stock Option for 2,500,000 shares (exercise price = fair market value on grant date).

2,500,000 Restricted Stock Units (RSUs), both vest over 4 years with 25% cliff on each anniversary, subject to continued service;

f.  Eligible for additional equity awards at Board discretion; Standard benefits (including 25 days PTO, 401(k) match up to $6,000), expense reimbursement;

g.  Termination Provisions: For Cause or Resignation without Good Reason: Only Accrued Benefits (unpaid salary, vested benefits, prior-year bonus if earned); Without Cause or for Good Reason: 12 months Base Salary (installments), prorated bonus, 12 months continued equity vesting, and COBRA premium support (up to 12 months). Requires execution of a general release; Death/Disability: Only Accrued Benefits.

h.  Change in Control (CIC) Benefits (Section 2.6): All equity awards (options, RSUs, etc.) accelerate and fully vest (100%) upon a CIC, provided Executive is still employed at the time the CIC is consummated. If Executive is terminated without Cause or resigns for Good Reason within 12 months following a CIC, Executive receives a lump-sum payment equal to 1x Base Salary (using the year of termination or the year preceding the CIC, whichever is greater), subject to signing a release. This is in addition to the standard severance elements (though the CIC provision specifies the lump-sum structure).

i.  Restrictive Covenants (Article III): Standard confidentiality, IP assignment, non-solicitation (12 months post-termination), non-disparagement;

j.  Breaches can result in forfeiture of severance and injunctive relief.

k.  Governed by Delaware law; disputes via binding arbitration.

9.    The terms of the arrangement between MMAT and Sasson were memorialized in an Employment Agreement ("*Employment Agreement*") entered into on November 5, 2023, executed by Sasson and Jack Harding in his capacity as Chairman of the MMAT Board of Directors.

3

10. It is unknown whether any Change in Control Benefits were earned by, or paid to, Sasson.

11. On August 8, 2024, MMAT entered into a Consulting Agreement with Bdalcom ("*Consulting Agreement*"). Among other things, the Consulting Agreement included the following recitals:

> WHEREAS, MMAT requires Consultant to transition MMAT into a Chapter 7 bankruptcy proceeding (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") and assist MMAT and its advisors after such bankruptcy filing;

> WHEREAS, the required services (collectively, the "Services") will include: (i) appearing on behalf of MMAT at the creditors' meeting conducted under 11 U.S.C. § 341 to testify under oath at such meeting regarding, among other things, MMAT's business, financial condition, assets, liabilities, and other operating metrics; (ii) providing such additional information as may be reasonably requested by the trustee appointed in the Bankruptcy Case (the "Chapter 7 Trustee"); (iii) assisting MMAT's advisors with the preparation of, and any amendments to, the Schedules of Assets and Liabilities and Statement of Financial Affairs to be filed for MMAT in the Bankruptcy Case; and (iv) being reasonably available to MMAT's advisors to address questions concerning the assets of MMAT (*e.g.,* location and storage of inventory and records, including electronic records) to help enable MMAT's transition of such items to the control of the Chapter 7 Trustee.

12. As consideration for entering into the Consulting Agreement, Bdalcom was to be paid $106,200, which amount was said to be fully earned upon receipt.

13. As a limited liability company, Bdalcom had no independent ability, other than through its sole equity member Sasson, to provide any type of service to the Plaintiff for the benefit of the Meta estate.

14. On August 9, 2024, Meta filed its voluntary chapter 7 petition in the United States Bankruptcy Court for the District of Nevada. Sasson signed the petition, the Schedules of Assets and Liabilities ("Schedules"), and the Statement of Financial Affairs ("SOFA"), in his capacity as Chief Executive Officer.

15. Sasson was an insider of Meta as that term is defined by 11 U.S.C. § 101(31)(B).

16. The SOFA discloses that between July 31, 2023 and August 8, 2024, Sasson was paid at least $689,745, described variously as a combination of salary, severance cash out, and for

4

a 'consulting agreement'. Of the total paid, during that period, on August 8, 2024, Sasson paid himself  $100,000 for his consulting contract ("Transfer 1"), and $301,320.18  for "salary, severance and vacation pay" ("Transfer 2").

17.    Plaintiff alleges that Meta was insolvent as that term is defined by 11 U.S.C. §101(32) from and after, not later than January 1, 2024.

18.    The Consulting Agreement is governed by Nevada law.

19.    Plaintiff is informed and believes that Sasson is the sole member and manager of Bdalcom.

20.    Plaintiff is informed and believes that Bdalcom is a shell entity with no independent operations, employees, or assets other than those provided or controlled by Sasson.

21.    Bdalcom had no ability to perform under the Consulting Agreement except through Sasson.

22.    Plaintiff alleges that Sasson commingled or treated Bdalcom's affairs as his own personal affairs.

23.    Plaintiff alleges Sasson used Bdalcom as a mere instrumentality, or alter ego, for Sasson's personal benefit.

24.    Under California law (Corp. Code § 17703.04(b)) and Nevada law (NRS 78.747) and common law), Sasson is personally liable for Bdalcom's obligations to the same extent as if the Transfer had been made directly to him.

25.    As a result of the foregoing, Sasson and Bdalcom are jointly and severally liable to the estate for the full amount of the Transfer, plus interest, costs, and attorneys' fees.

### FIRST CLAIM FOR RELIEF

**Avoidance of Transfer Under an Employment Contract**
**Section 548(a)(1)(B)(i), (ii)(IV) of the Bankruptcy Code**

26.    Plaintiff incorporates by reference her allegations set forth in paragraphs 1 through 25 hereof, as if fully set forth herein.

27. Section 548(a)(1)(B)(i), (ii)(IV) of the Bankruptcy Code provides, in relevant part, that:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

28. Transfer 1 of $100,000 to Bdalcom pursuant to the terms of the Consulting Agreement on the day before the Meta chapter 7 petition was filed, was for the benefit of Sasson as an insider.

29. The Meta chapter 7 estate received no benefit from Transfer 1 paid to Bdalcom, e.g., no reasonable equivalent value in exchange for the $100,000.

30. Transfer 1 to Bdalcom on August 8, 2024 pursuant to the terms of the Consulting Agreement was not made in the ordinary course of business.

### SECOND CLAIM FOR RELIEF

**Avoidance And Recovery Of Fraudulent Transfer
Under 11 U.S.C. §§ 548 And 550, And Alter Ego Liability
Under Nevada And California Law**

31. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

32. On August 8, 2024, Meta entered into the Consulting Agreement with Bdalcom LLC ("Bdalcom"), a California limited liability company solely owned and controlled by Uzi Sasson, Meta's then-CEO.

6

33.    On the same date, pursuant to the Consulting Agreement, Meta paid Bdalcom the Transfer 1 in cash, purportedly in exchange for future consulting services to be provided to the post-bankruptcy Meta Estate.

34.    No consulting services were ever provided by Bdalcom, Sasson, or any other person or entity under the Agreement. Plaintiff  is informed and believes that, as a shell entity, Bdalcom had no independent employees, operations, or capacity to perform such services other than through Sasson himself.

35.    Transfer 1 was made with actual intent to hinder, delay, or defraud Meta's creditors. Badges of fraud include, without limitation:

Transfer 1 occurred one day before the Meta Chapter 7 petition was filed on August 9, 2024;

Transfer 1 was to an insider (Sasson's wholly owned LLC while he served as CEO);

Neither Meta nor the Meta Estate received reasonably equivalent value (no services performed) in exchange for Transfer 1;

Meta was insolvent at the time of Transfer 1;

Transfer 1 depleted Estate assets on the eve of bankruptcy with no legitimate business purpose.

36.    Alternatively, the Debtor received less than reasonably equivalent value in exchange for the Transfer 1, and (i) was insolvent at the time of  Transfer 1 or became insolvent as a result thereof, (ii) was engaged in business with unreasonably small capital, or (iii) intended to incur, or believed it would incur, debts beyond its ability to pay.

37.    Pursuant to 11 U.S.C. §§ 548 and 550, the Trustee may avoid  Transfer 1 and recover the amount of  Transfer 1 from Bdalcom as initial transferee and from Sasson as immediate or mediate transferee and/or beneficiary of the Transfer.

38.    Pursuant to California law (Corp. Code § 17703.04(b)) and Nevada law (NRS 78.747) and common law), Sasson is personally liable for Bdalcom's obligations to the same extent as if Transfer 1 had been made directly to him.

39. As a result of the foregoing, Sasson and Bdalcom are jointly and severally liable to the estate for the full amount of Transfer 1, plus interest, costs, and attorneys' fees.

**THIRD CLAIM FOR RELIEF**

**Avoidance and Recovery Of Fraudulent Transfer
11 U.S.C. §§ 548  and 550 and Alter Ego Liability
Under Nevada and California Law**

40. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

41. Nothing in the Consulting Agreement provided that Bdalcom would be entitled to additional salary or severance pay represented by Transfer 2.

42. As of August 9, 2024, at most, if Sasson were a regular employee of Meta and not Chief Executive Officer, he might have been entitled to $15,150 by reason of 11 U.S.C. § 507(a)(4)(A).

43. Transfer 2 to Sasson and Bdalcom in the amount of $301,320.18 for salary, severance and vacation pay was for less than reasonably equivalent value and was made when Meta was insolvent.

**FOURTH CLAIM FOR RELIEF**

**Avoidance and Recovery of Fraudulent Transfer
Under 11 U.S.C. § 544 and N.R.S. 112.010 et seq.**

44. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

45. The Schedules and Statement filed in this chapter 7 case identifies numerous unsecured creditors which could avoid the Transfer under NRS 112.180/112.190.

46. The Transfer meets actual intent (with badges) and/or constructive fraud elements under Nevada law. The Transfer was made while MMAT was insolvent.  The Transfer was made to an insider. The Transfer was made on the eve of bankruptcy.  MMAT did not receive reasonably equivalent value in exchange for the Transfer.

47.     As a result of the foregoing, Sasson and Bdalcom are jointly and severally liable to the estate for the full amount of the Transfer, plus interest, costs, and attorneys' fees.

### FIFTH CLAIM FOR RELIEF

**Avoidance And Recovery Of Fraudulent Transfer
Under 11 U.S.C. §§ 549 And 550**

48.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

49.     The Meta SOFA discloses that Transfers 1 and 2 under the Consulting Agreement were made on Augst 8, 2024.  It is unclear how the Transfers were made to Bdalcom/Sasson.  If the Transfers were made electronically on August 8, 2024, it remains voidable under 11 U.S.C.§ 548. Alternatively, if the Transfers were by check or by wire and not received by Bdalcom or Sasson until after August 9, 2024, the Transfers were not authorized and therefore voidable by reason of 11 U.S.C.§ 549.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

a.  That each of Transfers 1 and 2 be determined to be voidable under the Bankruptcy Code and be avoided;

b.  That Judgment be entered in favor of Plaintiff against Sasson and/or Bdalcom in an amount not less than $401,320.18;

c.  That Sasson and/or Bdalcom be ordered to pay Plaintiff $401,320.18 pursuant to Section 550(a) of the Bankruptcy Code;

d.  That the Meta Estate be awarded interest accruing from the commencement of this adversary proceeding to the date of collection at the Federal Rate;

e.  That judgment be entered against Bdalcom and Sasson jointly and severally in the amount of the avoided fraudulent transfers plus interests and costs as aforesaid; and

f.  That the Meta Estate be granted such other and further relief as is just.

9

DATED: August 5, 2026.

HARTMAN & HARTMAN

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.,
Attorney for Christina Lovato, Trustee/Plaintiff

SBW LAW GROUP

*/s/ Clayton P. Brust*
Clayton P. Brust, Esq.,
Attorneys for Christina Lovato, Trustee/Plaintiff